[Civ. No. 63726. Second Dist., Div. Four. Nov. 29, 1982.]

RALPH L. COLLIN, Plaintiff and Appellant, v.
CONNECTICUT VALLEY ARMS, INC., Defendant and Respondent.

**816**

COUNSEL

Matz, Brody & Albert, Thon & Matz, Jeffrey A. Matz, Lewis M. Brody and Andrew S. Albert for Plaintiff and Appellant.

McHale & Connor, Michael J. McHale, Arthur E. Schwimmer and Marc J. Poster for Defendant and Respondent.

## OPINION

AMERIAN, J.—Plaintiff Ralph L. Collin (Collin) appeals from a judgment entered April 28, 1980,[1] in favor of Connecticut Valley Arms, Inc. (CVA) after jury trial verdict for CVA. We reverse on the basis that no verdict was reached, inasmuch as only *seven* jurors agreed in the special verdict that while CVA was negligent, its negligence was not a proximate cause of injury to plaintiff. (See Cal. Const., art. I, § 16; Code Civ. Proc., § 618.)

### FACTS

For recreational purposes, appellant Collin was shooting a shotgun in the Mojave Desert on May 30, 1976, when the weapon exploded. In the accident Collin suffered severe injuries to his right hand. Collin had obtained the shotgun from a debtor, who gave it to Collin in satisfaction of a debt. Collin himself purchased the powder and shells he was using that day. Suit for personal injury damages was brought against CVA (the manufacturer of the shotgun) and against the distributor of the weapon, the store which sold the weapon to Collin's debtor, the manufacturer of the powder and the store which sold the powder to Collin. The complaint proceeded on four theories: negligence, strict liability, breach of express warrranty and breach of implied warranty. When the matter went to trial, the only defendants who had not settled were the retailer of the weapon, the retailer of the powder and CVA.

The case was presented to the jury by way of special verdict form.[2]

While the jury was deliberating, the two retailers reached a settlement with Collin and the settlement was approved by the court as a good faith settlement.

CVA remained as the only defendant whose fate was in the hands of the jury. As to the strict liability theory against CVA, the verdict was in favor of CVA by a vote of eleven to one. As to the negligence theory against CVA, the jury, by vote of ten to two, found that CVA was negligent. On the question of proximate cause, by vote of nine to three the jury found that the negligence of CVA was not a proximate cause of Collin's injury. Judgment was entered in favor of CVA and against Collin.

---

[1]This was before the decisions in *Juarez* v. *Superior Court* (1982) 31 Cal.3d 759 [183 Cal.Rptr. 852, 647 P.2d 128], and *United Farm Workers of America* v. *Superior Court* (1980) 111 Cal.App.3d 1009 [169 Cal.Rptr. 94], discussed *infra*.

[2]The special verdict form is not a part of the record but the judgment on special verdict shows the questions put to the jury and the responses.

ISSUES

Appellant contends that no verdict was reached and judgment was entered in error because nine identical jurors did not agree on the liability aspects of the case as is directed by BAJI No. 15.51.[3] We agree that no verdict was reached and the judgment must be reversed.

A. *It Was Error to Enter Judgment Based on the Voting Patterns of the Jurors*

As to the issues impacting CVA, the following issues and juror answers are of significance:

*Issue No. 1*: Was there a defect in the shotgun involved of either of the following defendants?

Defendant Connecticut Valley Arms, Inc. - No.

*Issue No. 11*: Were any of the defendants negligent?

Defendant Connecticut Valley Arms, Inc. - Yes.

*Issue No. 12*: As to each defendant that you have answered "Yes" in issue No. 11, was the negligence of such defendant(s) a proximate cause of injury to the plaintiff?

Defendant Connecticut Valley Arms, Inc. - No.

Juror No. 7 did not agree with the majority on issue No. 1. Jurors 5 and 6 did not agree with the majority on issue 11. Jurors 2, 7 and 11 did not agree with the majority on issue 12. As to negligence and proximate cause only jurors 1, 3, 4, 8, 9, 10 and 12 concurred in a result that CVA was negligent, but its negligence was not a proximate cause, of injury to Collin.

In *Juarez* v. *Superior Court, supra*, 31 Cal.3d 759, the Supreme Court addressed one aspect of the issue of whether the same nine jurors need to agree on all issues in a special verdict in a comparative fault case. In that case, nine identical jurors had agreed on the issues of negligence, proximate cause and damages. A different group of nine jurors agreed on apportionment of damages. (At p. 763.) The Supreme Court held that nine identical jurors need not agree both on the determination of liability and on the apportionment of

---

[3]BAJI No. 15.51 provides, in part, "As soon as 9 or more identical jurors have agreed upon each answer required by such directions on the special verdict form, so that each of those 9 or more may be able to state truthfully that every answer is his or hers, you shall have such verdict signed and dated by your foreman and you shall return with it to this room."

damages. It stated, "Therefore, we hold that if nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of *any* nine jurors. To hold otherwise would be to prohibit jurors who dissent on the question of a party's liability from participation in the important remaining issue of allocating responsibility among the parties, a result that would deny all parties the right to a jury of 12 persons deliberating on all issues. (Cal. Const., art. I, § 16; Code Civ. Proc., §§ 613, 618.) . . ." (At p. 768.)

The court referred with approval to *United Farm Workers of America* v. *Superior Court, supra,* 111 Cal.App.3d 1009. In *United Farm Workers* the trial court declared a mistrial when nine identical jurors agreed that defendant was negligent and that such negligence was the proximate cause of injury to plaintiff. However, the same nine jurors did not agree that plaintiff was negligent and his negligence contributed to the injury. However, all 12 jurors agreed on the amount of damages and 11 of the 12 agreed on the percentage of fault to be allocated to plaintiff and defendant. (At p. 1011.) The appellate court held that a verdict had been reached and issued a writ of mandate directing that judgment be entered on the verdict. The *United Farm Workers* court stated, "We hold that to find liability, the same nine jurors who find negligence on the part of a party must also find that negligence to be a proximate cause of the injury . . . ." (At p. 1019.)

We agree with *United Farm Workers* and rely on the strength of the Supreme Court opinion in *Juarez* in concluding that no verdict was reached here because the same nine jurors did not agree on the questions of negligence and proximate cause.

■ Collin has not waived his right to challenge the judgment. At trial, Collin urged that no verdict had been reached and moved for mistrial after the jury had been polled but before the verdict was ordered filed by the trial judge. *Henrioulle* v. *Marin Ventures, Inc.* (1978) 20 Cal.3d 512 [143 Cal.Rptr. 247, 573 P.2d 465], sets out the requirement that "Failure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected." (At p. 521.)

Collin met that requirement here. He argued to the judge to no avail that no verdict was reached. Perhaps there was clouding by the plethora of issues presented to the jury, at least 13, or the fact that the retailer defendants who had reached settlement with plaintiff were included on the verdict form and were permitted to argue the mistrial motion made by Collin. In any event, plaintiff

was unable to persuade the judge that no verdict had been reached. To demand more of Collin is to expect too much of him. His objection was lodged before the jury was discharged but the trial judge was of the opinion that a verdict had been reached and ruled against him. This is no waiver by Collin.

### B. *The Jury Determination on Strict Liability Must Stand*

As noted above, 11 jurors found for CVA on the strict liability issue presented as issue No. 1. Ordinarily that would put to rest the question of strict liability and resolve it in favor of CVA. (See e.g. *Juarez* v. *Superior Court, supra,* 31 Cal.3d 759, 764, fn. 3.)

However, Collin questions the admissibility of certain experiment evidence presented by CVA through its expert witness, Walter Nass, bearing on the strict liability issue. ■ The admissibility of experiment evidence is ordinarily a question left to the discretion of the trial court and the decision of the trial court will be reversed only when it is clearly abused. (*Culpepper* v. *Volkswagen of America, Inc.* (1973) 33 Cal.App.3d 510, 522 [109 Cal.Rptr. 110].)

Here CVA has highlighted in its brief, by page and line, the portions of the trial transcript which demonstrate the conflicting evidence on several crucial points, including the type and quantity of powder used by Collin on the day of the accident and the manner in which the weapon was handled by Collin between firings before the accident. In support of the decision of the trial judge to admit the experiment testimony, CVA urges that there was substantial similarity between the experiments and the testimony concerning the accident.[4]

We agree. Not only has appellant Collin failed to demonstrate an abuse of the discretion of the trial court, respondent CVA has established that such discretion was properly exercised when the experiment evidence of Mr. Nass was admitted.

### C. *The Trial Court Correctly Refused to Admit Rebuttal Evidence From an Expert Not Previously Designated by Plaintiff*

■ Collin contends that the trial court erred in refusing to permit rebuttal testimony from C. Howard Craft, a metallurgist. The trial judge, on the day before jury selection began, granted the motion of Collin to permit his examination of five exemplar guns tested by Nass, the expert for CVA. The test performed by Craft on behalf of plaintiff was on the barrels of those weapons to ascertain their metal content. Collin had completed the deposition of Nass only the day before trial in this case was set to begin.

---

[4]By contrast, Collin's brief contains numerous fact recitations without any citation to the 1,758 page record and does not comply with California Rules of Court, rule 15(a).

Under the Code of Civil Procedure section 2037 et seq. procedure, Collin had not listed Craft as a witness expected to be called. The trial judge ruled before jury selection commenced that Craft would not be permitted to testify as part of plaintiff's case-in-chief, because he was not listed by plaintiff. However a ruling was deferred until later as to whether Craft would be permitted to testify on rebuttal.

During the course of the trial, the question of permitting Collin to call Craft on rebuttal was raised again. At that time Collin, in his offer of proof, indicated that Craft would be testifying on his chemical analysis of the barrels of the Nass exemplar guns and on an electron microscopic study of those exemplar guns.

Each of the three defendants in trial objected to the proffered testimony because Craft had not been listed as a witness on the Code of Civil Procedure section 2037.2 list and no mention of electron microscopic study had been made by plaintiff until the offer of proof, nine days into the trial. Defendants argued that their opportunity to depose the witness was gone, because plaintiff failed to list Craft under Code of Civil Procedure section 2037.2, and that it would work a hardship on defendants to hear Craft's testimony for the first time from the stand in trial.

The judge sustained the objection of the three defendants and did not permit Craft to testify on rebuttal as to the tests he conducted during trial. Collin argues on appeal, as he did at trial, that the testimony of Craft was proper for impeachment purposes.[5] The expert for CVA had testified on the question of metal content in the exemplar guns. Craft's testimony was proffered to show the results of his testing as to the metal content of the exemplar guns.

In *Ellenberger* v. *Karr* (1982) 127 Cal.App.3d 423 [179 Cal.Rptr. 583], we stated, "As is required by sections 2037 et seq., of the Code of Civil Procedure, the parties had exchanged lists of proposed expert witnesses. When an expert witness for plaintiff had testified, defendants sought to call an expert witness, whose name had not been included in their list, to testify that plaintiffs' expert was entirely wrong. Under section 2037.5, such an unlisted expert may be called only 'for purposes of impeachment.' The contention here is that the purpose was to *impeach* plaintiffs' expert. The contention is frivolous. Calling an expert witness to express an opinion contrary to that expressed by another expert witness is not the 'impeachment' contemplated by section 2037.5." (At

---

[5]If this were so, there would be no necessity to list Craft under Code of Civil Procedure section 2037.2, because of the exception in Code of Civil Procedure section 2037.5, which provides, "Except as provided in Section 2037.6, upon objection of a party who has served his list of witnesses in compliance with Section 2037.2, no party required to serve a list of expert witnesses on the objecting party may call an expert witness to testify, except for purposes of impeachment, unless the information required by Section 2037.3 for such witness is included in the list served."

p. 427.) That principle applies to this case. On the strength of *Ellenberger* v. *Karr, supra,* we conclude that it was not error to refuse to permit Craft to testify on rebuttal as to the results of his testing conducted during trial.

DISPOSITION

The judgment is reversed, and the case is remanded.[6]

Woods, P. J., and Kingsley, J., concurred.

Petitions for a rehearing were denied December 16 and December 20, 1982, and respondent's petition for a rehearing by the Supreme Court was denied January 27, 1983. Kaus, J., and Grodin, J., were of the opinion that the petition should be granted.

---

[6]As an additional contention Collin argues that it was error for the trial court to refuse to give BAJI No. 3.78. Collin apparently requested that BAJI Nos. 3.75, 3.77 and 3.78 all be given but did not request that BAJI No. 3.76 be given. The use note to BAJI No. 3.78 cautions, "If this instruction is given do *not* give Instruction 3.75." (Original italics.) Because it is unlikely that any error which may have occurred will recur on retrial, we do not address this additional contention.